BOOKER, INC. d/b/a Corner Pocket
Tavern, Appellant–Defendant,

v.

Dawn MORRILL, Individually, and as Administratrix of the Estate of Ronald E. Morrill, Jr., Deceased, and Kenny Morrill and Jeffrey Morrill, By Their Next Friend, Dawn Morrill, Appellees–Plaintiffs.

No. 57A05–9303–CV–99.

Court of Appeals of Indiana,
Fifth District.

Aug. 30, 1994.

James D. Witchger, Rocap Witchger & Threlkeld, Joseph F. Quill, Indianapolis, for appellant.

Latrialle Wheat, Allen R. Stout, Allen N. Wheat, Wheat & Stout, Angola, for appellee.

RUCKER, Judge.

In this dram shop liability action, Defendant–Appellant Booker, Inc. d/b/a Corner Pocket Tavern (Booker) appeals the trial court's judgment in favor of Plaintiffs–Appellees Dawn Morrill, individually and as administratrix of the estate of Ronald Morrill, Jr., and Kenny and Jeffrey Morrill by their next friend Dawn Morrill (Morrill). Booker raises five issues for our review which we separate and rephrase as:

1) Whether driving a motor vehicle while intoxicated is willful and wanton misconduct which operates to bar an action by the driver against a provider of alcohol?

2) Whether an intoxicated driver who injures himself should be barred from recovery as a matter of public policy?

3) Whether Ron Morrill's actions were intentional and thus excluded from the Comparative Fault Act?

4) Whether the evidence is sufficient to establish that Booker had actual knowledge of Ron Morrill's visible intoxication?

5) Whether the evidence is sufficient to establish that Ron Morrill's intoxication was the proximate cause of his death?

6) Whether the trial court erred in admitting evidence of Ron Morrill's blood-alcohol content?

We affirm.

At approximately 7:45 a.m. on October 2, 1990, Ron Morrill arrived at the Corner Pocket Tavern in Fremont, Indiana. Morrill was joined by a friend, Bryon Arno, and the two men began drinking and playing pool. At approximately 11:45 a.m. the men left the tavern and Morrill drove them away in his Ford Bronco. Twenty minutes later, as the men traveled along Fremont Road, Morrill's vehicle suddenly left the roadway, went over a six-foot embankment, traveled through a field and broke a fence, went through twelve-foot-high bushes, traveled an additional ten to fifteen feet then crashed into a brick house with sufficient force to move the structure off of its foundation.

When police arrived on the scene a short time later, Morrill was unconscious and his vital signs were declining rapidly. He was taken by ambulance to a nearby hospital, but he never regained consciousness and died later that day. A blood test revealed that Morrill's blood-alcohol content was .21%. Bryon Arno, who survived the accident indicated that he and Morrill each drank at least eight to ten beers and three shots of peppermint schnapps at the Corner Pocket Tavern that morning. Arno had no recollection of leaving the tavern and had blacked out at the time of the accident.

On November 26, 1990, Dawn Morrill on behalf of herself and her children filed a complaint against Booker for the wrongful death of her husband alleging that Booker's negligent provision of alcohol was the proximate cause of Ron Morrill's death. At a bench trial held on October 1, 1992, evidence of Ron Morrill's blood-alcohol content was admitted into evidence over objection by Booker. In addition, Morrill presented the testimony of Dr. Michael Evans, a toxicologist, who opined that any person who has a blood-alcohol content of .21% will exhibit physical signs of intoxication. Among those signs are a loss of hand-eye coordination, impaired balance, stumbling, staggering gait, drowsiness, mental confusion, disorientation, exaggerated emotional state, blurred vision, and loss of consciousness. Dr. Evans also testified that in order for Ron Morrill to have reached a blood-alcohol level of .21% he would have had to consume ten to twelve beers over a four-hour period.

The defense attempted to rebut this evidence by presenting the testimony of bartenders Marion Barringer and Stephen Shively and the testimony of Tom Whitsett, a patron of the Corner Pocket Tavern. All three men testified that they observed Ron Morrill at the tavern the morning of the accident and that he did not appear intoxicated. Likewise, Bryon Arno testified that Morrill did not exhibit signs of intoxication.

On November 30, 1992, the trial court entered its judgment supported by partial findings of fact and conclusions of law. The court found Booker fifty-one percent at fault and Ron Morrill forty-nine percent at fault and granted judgment for Morrill in the amount of $491,552.56. Booker now appeals.

■ Booker first complains that the trial court's findings are incomplete and in addition challenges various findings as unsupported by the evidence. However, Booker's argument is based upon a faulty premise, namely: that the trial court entered special findings of fact and conclusions of law. On its own motion, or the written request of any party filed with the court prior to the admission of evidence, a court must make special findings which contain all of the facts necessary for recovery by a party in whose favor conclusions of law are found. Ind.Trial Rule 52; *Dahnke v. Dahnke* (1989), Ind.App., 535 N.E.2d 172, *reh'g denied.* On review in that instance we apply a two-tiered standard: first, we will determine whether the evidence supports the findings; second, we will determine whether the findings support the judgment. The trial court's findings and conclu-

sions will be set aside only if they are clearly erroneous. *W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, 569, *trans. denied.*

■ However, in this case the trial court did not enter special findings but merely set out partial findings in support of its judgment. Therefore, the two-tiered standard of review reserved for special findings is inapplicable here; rather, we treat the judgment as a general one merely supported by partial findings and will affirm on any theory unless such theory is contrary to any of the findings of fact. *McClamroch v. McClamroch* (1985), Ind.App., 476 N.E.2d 514, *trans. denied.*

### I.

■ Booker contends that the trial court erred in granting judgment for Morrill because the act of driving a vehicle while intoxicated is willful and wanton misconduct which operates to bar recovery by the driver and his representatives.

■ Booker correctly notes that operating a motor vehicle upon a public highway while intoxicated constitutes willful and wanton misconduct. *Williams v. Crist* (1985), Ind., 484 N.E.2d 576, 578; *Szabo v. Cwidak* (1990), Ind.App., 558 N.E.2d 855, 857, *trans. denied; Kolkman v. Falstaff Brewing Corp.* (1987), Ind.App., 511 N.E.2d 478, 479, *trans. denied.* Further, in *Davis v. Stinson* (1987), Ind. App., 508 N.E.2d 65, *trans. denied,* we held that such conduct constituted a complete defense to any action by the intoxicated driver against the provider of the alcohol consumed. *Id.* at 67–68; *see also Kolkman,* 511 N.E.2d at 480. However, the cases so holding each involved actions accruing prior to the effective date of the Indiana Comparative Fault Act, Ind.Code § 34–4–33–1 to –14. The Act, effective January 1, 1985, eliminated the concept that certain degrees of negligence may operate as a complete bar to a plaintiff's recovery. *Robbins v. McCarthy* (1991), Ind. App., 581 N.E.2d 929, 934, *trans. denied.* Instead, conduct of both plaintiff and defendant that is reckless, willful or wanton should be compared as is simple negligence. I.C. § 34–4–33–2(a); *Robbins,* 581 N.E.2d at 934. Because the present action arose after the advent of comparative fault, no degree of

negligence on the part of the plaintiff, including that which may be characterized as willful and wanton, may operate to bar recovery. We find no error here.

### II.

■ Booker next maintains that an intoxicated driver who injures himself should be precluded from recovery even after the advent of comparative fault as a matter of public policy. Booker's argument is unpersuasive. In *Robbins,* 581 N.E.2d at 932 this court rejected an argument that public policy should preclude recovery against an intoxicated driver by a passenger who encouraged the intoxication, noting that "the determination of public policy in this state is a task dedicated to our legislative bodies." The *Robbins* court observed that the enactment of a comparative fault statute which subjects a broad range of negligent conduct, even willful and wanton misconduct, to comparative treatment, reflects a legislative determination that fairness is best achieved by a relative assessment of the parties' respective conduct. *Id.* at 932. "There is … no virtue in reviving an outmoded and often arbitrary judicial doctrine when the legislature, the arbiter of social policy, has indicated its clear intent to move toward a comprehensive method of comparative fault." *Id.* In light of the legislature's express intention to include willful and wanton misconduct in the comparative fault analysis, a determination that the actions of an intoxicated driver who injures himself fall outside the scope of comparative fault would directly contravene that intention. Booker's public policy argument therefore must fail.

### III.

■ Booker next contends that because Ron Morrill voluntarily became intoxicated and then made a conscious decision to drive, his actions were intentional and are therefore excluded from the Comparative Fault Act. Booker's argument is misplaced.

■ Indiana Code § 34–4–33–2(a) provides: " 'Fault' includes any act or omission that is negligent, willful, wanton, or reckless toward the person or property of the actor or

others, but does not include an intentional act." Intentional acts not covered by the Act involve consequences desired or consequences which the actor believes are certain or substantially certain to follow. *Dickison v. Hargitt* (1993), Ind.App., 611 N.E.2d 691, 698 citing *Robbins,* 581 N.E.2d at 933.

In determining whether an intentional act occurred in this case, the focus is not on the voluntariness of Ron Morrill's drinking and driving but is rather on whether, when Morrill drove off of the road, over a six-foot embankment, through a field, through a wire fence, through twelve-foot-high bushes, and into a house, his conduct was intentional. *See Foster v. Purdue University* (1991), Ind. App., 567 N.E.2d 865, *trans. denied* (conduct of intoxicated plaintiff who dove head first onto a "waterslide" was intentional because dive was made voluntarily and plaintiff believed injury was substantially certain to follow; court noted that plaintiff's action was unlike that of a vehicle operator embroiled in an accident and was instead analogous to that of a driver who deliberately heads his car into a brick wall). No evidence in the case before us demonstrates that Ron Morrill deliberately engaged in the conduct previously described. Rather, the evidence shows that Morrill was severely impaired due to his level of intoxication and may have been unconscious at the time of the accident. Such evidence is insufficient to establish as a matter of law that Morrill's conduct was intentional thus barring his representatives from recovery under the Comparative Fault Act.

### IV.

Booker also contends the trial court erroneously determined that the bartenders had actual knowledge that Ron Morrill was visibly intoxicated when they provided him with alcohol. Booker points out that the only evidence in the record that Morrill exhibited signs of intoxication is the testimony of Dr. Michael Evans who opined that any person with a blood-alcohol content of .21% would manifest physical signs of intoxication. According to Booker, Dr. Evans' testimony is mere speculation and is in direct conflict with the testimony of eyewitnesses who observed Ron Morrill on the day in question.

Indiana Code § 7.1–5–10–15.5(b) provides:

A person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage unless:

(1) The person furnishing the alcoholic beverage had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished; and

(2) The intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint.

In determining whether the requisite knowledge exists, the trier of fact must resort to reasonable inferences based upon examination of the surrounding circumstances. *Muex v. Hindel Bowling Lanes, Inc.* (1992), Ind.App., 596 N.E.2d 263, 266. Proof that an alcohol provider knew of the recipient's intoxication may be made by indirect or circumstantial evidence. *Gariup Construction Co., Inc. v. Foster* (1988), Ind., 519 N.E.2d 1224, 1230. Factors which can be considered in determining whether a person was intoxicated to another person's knowledge include what and how much the person was known to have consumed, the time involved, the person's behavior at the time, and the person's condition shortly after leaving. *Ashlock v. Norris* (1985), Ind.App., 475 N.E.2d 1167, 1170, *trans. denied.*

In the case at bar, Dr. Evans' testimony is circumstantial evidence that Ron Morrill was exhibiting signs of intoxication at the time the bartenders provided him with alcohol. The fact that the bartenders along with other witnesses denied such manifestations is not controlling. The court was free to disbelieve that testimony and to conclude instead that based on the amount of alcohol Ron Morrill consumed and the behavior he must have been exhibiting at the time in question, the bartenders knew Morrill was visibly intoxicated yet continued to serve him with alcohol. Because sufficient evidence exists from which the trier of fact could conclude Booker had

actual knowledge that Morrill was visibly intoxicated, the trial court's determination in that regard must be affirmed.

## V.

■ Booker also addresses the question of proximate cause. In its initial brief, Booker alleged the trial court erred in failing to make a specific finding regarding proximate cause. As we have already noted, that argument was based on a faulty premise, namely, that the trial court entered special findings of fact and conclusions of law. Because the court did not enter special findings, the absence of a finding regarding proximate cause does not constitute error. In its reply brief, Booker points out that causation is an essential element of a claim based on negligence and implies that the evidence in this case does not establish the existence of proximate cause.

■ Booker correctly observes that liability may not be imposed for the negligent furnishing of alcoholic beverages to Ron Morrill unless Morrill's intoxication was the proximate cause of his death. I.C. § 7.1–5–10–15.5(b)(2); *Rauck v. Hawn* (1990), Ind. App., 564 N.E.2d 334, 337. In order to establish proximate cause, the plaintiffs had the burden of proving that Morrill's intoxication was "that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produce[d] the result complained of and without which the result would not have occurred." *Orville Milk Co. v. Beller* (1985), Ind.App., 486 N.E.2d 555, 559. The existence of proximate cause is normally a question of fact to be determined by the jury. *Adams Township v. Sturdevant* (1991), Ind.App., 570 N.E.2d 87, *trans. denied.* Only where a single inference or conclusion can be drawn from undisputed facts is the existence of proximate cause a matter of law to be determined by the court. *Id.*

From the evidence presented in this case, the trier of fact could reasonably have drawn the inference that Morrill's intoxication so impaired his ability to drive that he was unable to control his vehicle and was therefore involved in an accident which resulted in his death. Sufficient evidence exists to establish the element of proximate cause.

## VI.

■ Booker finally contends that the trial court erred in admitting evidence of Ron Morrill's blood-alcohol content. According to Booker, the evidence is irrelevant and immaterial to any issue in the case.

■ Evidence is relevant if it has a logical tendency to prove a material fact. *Valinet v. Eskew* (1991), Ind., 574 N.E.2d 283. The question of relevance of evidence is for the discretion of the trial judge and his decision will be reversed only where a clear abuse is shown. *State v. Hall* (1982), Ind., 432 N.E.2d 679. Here, evidence of Ron Morrill's blood-alcohol content along with the testimony of Dr. Evans has a tendency to prove that Morrill was visibly intoxicated at the time he was served alcoholic beverages and that the bartenders knew of the intoxication. Because Morrill's blood-alcohol content was relevant to a material issue in the case, the trial court properly admitted it into evidence. We find no error.

Judgment affirmed.

SHARPNACK, C.J., and NAJAM, J., concur.